# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| IVORY MCGREGOR, Personal<br>    Representative of the<br>    Estate of Irma McGregor, | )<br>)<br>)<br>) | |
| Plaintiff, | ) | |
| v. | ) | No. 04-0436-CV-W-FJG |
| UNITED STATES OF AMERICA, | )<br>)<br>) | |
| Defendant. | ) | |

# ORDER

Pending before the Court is Defendant's Motion for Summary Judgment or in the Alternative for Judgment on the Pleadings (Doc. No. 12). Together with said motion are Plaintiff's Response in Opposition (Doc. No. 17), Defendant's Reply (Doc. No. 19), and all accompanying exhibits and affidavits.

**I. Facts.**

In May 1997, four Series EE United States Savings Bonds were purchased in the name of "Irma J. McGregor or Ivory McGregor, Sr." The bonds, purchased for $500 each, were in the face amount of $1,000 each, and bore the serial numbers M69,635,291EE through M69,635,294EE. Copies of the bonds, as received by the United States Department of the Treasury, Bureau of the Public Debt ("BPD") after they were redeemed, are attached to defendant's Motion for Summary Judgment, or in the Alternative for Judgment on the Pleadings (hereafter, "defendant's motion") as Exhibit A-1. These bonds

are hereafter referred to as "the original bonds" and their serial numbers as "291", "292", "293" and "294."

In July 1997, Irma and Ivory McGregor made a claim for non-receipt of the bonds. In the claim form, the McGregors acknowledged that if replacement bonds were issued, the original bonds would become property of the United States, and bound themselves to return the originals if recovered. They also agreed to indemnify the United States for losses resulting from redemption of the original bonds. The non-receipt claim was approved, and replacement bonds bearing serial numbers M70,272,221EE through M70,272,224EE were issued with the same registration and issue date as the original bonds, and sent to the McGregors. These bonds are hereafter referred to as "the replacements bonds" and their serial numbers as "221", "222", "223" and "224."

On May 8, 1998, replacement bond 222 was redeemed at Bank Midwest, N.A., for $521.60. On the same date, a $200 Series EE bond (serial number R138515884EE), also registered "Irma J. McGregor or Ivory McGregor, Sr." was also redeemed at Bank Midwest, N.A. Both of these bonds bear the endorsement of Irma J. McGregor.

On May 11, 1998, the remaining three replacement bonds, all four of the original bonds, and eleven other Series EE savings bonds with the same registration ("Irma J. McGregor or Ivory McGregor, Sr.") were redeemed at Commerce Bank, N.A., Grandview, Missouri. All eighteen of these bonds bore an endorsement signature purporting to be that of Irma J. McGregor. Three of the unrelated bonds (R138515883EE, R138515885EE, and R138515886EE) had been issued the same date as the $200 bond (R138515884EE) that Irma McGregor had redeemed on May 8, 1998, and were in the same number sequence. The total face amount of the eighteen bonds was $10,000, of which $7,000 was from the

2

original and replacement bonds, and the combined redemption amount was $5,212.40, of which $3,651.20 was from the original and replacement bonds.

Following redemption, the eighteen bonds registered to the McGregors that were redeemed by Commerce Bank on May 11, 1998 bore the numbers 14126415 through 14126432 that were imprinted on the backs of the bonds prior to their submission through the bond clearing process. When the eighteen bonds are placed in the sequence in which they were numbered, the original bonds, replacement bonds, and the eleven unrelated bonds are mixed together, as follows:

```
14126415 unrelated
14126416 unrelated
14126417 unrelated
14126418 unrelated
14126419 unrelated
14126420 unrelated
14126421 unrelated
14126422 replacement (223)
14126423 original (293)
14126424 unrelated
14126425 original (291)
14126426 replacement (224)
14126427 original (294)
14126428 unrelated
14126429 replacement (221)
14126430 original (292)
14126431 unrelated
14126432 unrelated
```

One of the unrelated bonds redeemed on May 11, 1998 bears notations with the endorsement, recording Irma McGregor's social security number, driver's license number and birth date.

Upon discovery of the double payment, the BPD wrote to Irma McGregor on September 8, 1998, to confirm that she had redeemed the original bonds. Photographs of

3

the paid bonds were enclosed, as well as an affidavit of forgery that Irma McGregor could complete if the signatures on the bonds were not hers. The letter stated: "If you are satisfied that you did not sign the requests for payment or receive the proceeds of the bonds, please complete and sign the enclosed form and return it with the photographs." No response was received by the BPD.[1]

On November 25, 1998, the BPD wrote to Irma McGregor again, requesting reimbursement of $2,086.40, which was the redemption amount of the four original bonds, and advising that charges and interest would begin to accrue after 30 days. No response was received by the BPD.[2]

Irma McGregor died on December 17, 1998.[3] Defendant states that, unaware of Irma McGregor's death, the BPD made numerous attempts to reach her in March, April and May 1999, first through Commerce Bank, then through phone messages left for her at the number she indicated on the non-receipt claim form. However, Ivory McGregor states he was not aware of any of these attempts.

Mr. McGregor states that he and his wife owned a cleaning business before, during and after the bonds were redeemed. Mr. McGregor hired many people throughout the years. These people came and went at the address where Irma resided to pick up

---

[1] Ivory McGregor states that he does not know whether Irma McGregor received this letter; Mr. McGregor has no knowledge regarding his wife's receipt of any correspondence from BPD regarding the missing bonds because he did not live with her at that time.

[2] Again, Mr. McGregor has no knowledge whether this was received by Irma McGregor.

[3] Mr. McGregor states that Irma McGregor had been ill for three years prior to her death, and that her illness often resulted in limited mobility.

4

paychecks and wages. The McGregors at times maintained large sums of cash in their home, and Mr. McGregor asserts that their employees were aware of this fact. He also asserts that employees were aware of Mrs. McGregor's weakened physical condition and the McGregors' separation. Mr. McGregor states that the McGregors visited doctors and hospitals regularly leaving the house located at 13229 Fuller, Grandview, Missouri empty and unprotected.

On May 17, 1999, the BPD sent Irma McGregor a notice of intent to offset federal payments, by certified mail, return receipt requested. A copy of the notice and the receipt, as signed by someone at the household (but not Ivory McGregor), is attached to defendant's motion as Exhibit A-9.

In March 2000, the Department of the Treasury notified Ivory McGregor that a tax refund payment under Irma McGregor's social security number was being reduced by $2,382.52, the amount of the duplicate redemption, with interest and charges. Ivory McGregor responded by telephone on April 12, 2000, stating that Irma McGregor was deceased, that he had been separated from her at the time the bonds were cashed, and that he knew nothing about the bonds being missing.

On April 18, 2000, the BPD received a letter from Ivory McGregor, in which he requested a review of the matter, stated that he did not know that Irma McGregor had savings bonds, and stated that he was separated from her during 1998. He enclosed handwriting samples that he indicated represented his and Irma McGregor's signatures.

On May 10, 2000, attorney Robert Wonder ("Wonder") wrote to the BPD on behalf of Ivory McGregor. The letter stated: "[T]he original bonds were not cashed by Mr. or Mrs. McGregor. Mr. McGregor and his wife did however cash the bonds that were issued as

5

substitutes for the original bonds that were not received by the McGregors." A copy of the letter is attached to defendant's motion as Exhibit A-11.[4]

Wonder enclosed three samples of what he identified as the signature of Irma McGregor, and asserted that it did not match the signature on the redeemed original bonds. On July 27, 2000, the BPD advised Wonder that it would correspond directly with Mr. McGregor. On the same date, it wrote to Ivory McGregor, noting the acknowledgment that the McGregors had redeemed the replacement bonds, noting that three of the original bonds were redeemed simultaneously with the replacement bonds, noting the McGregors' agreement to surrender the originals, and concluding that the tax offset was appropriate.

Under a cover letter of Mr. Wonder dated September 2, 2003, Ivory McGregor submitted to the BPD a partially filled out BPD "Claim for Lost, Stolen or Destroyed United States Savings Bonds" form. A box indicating that bonds had been stolen was checked, but none of the questions on the form concerning the circumstances of the theft was responded to.[5]

On February 19, 2004, Ivory McGregor submitted to the BPD an affidavit stating that he had examined the endorsed bonds, that he had not endorsed them, and that he had not authorized anyone else to endorse or negotiate them. The BPD responded by letter of March 4, 2004 to Wonder, stating that it found no basis for reversing the offset.

---

[4] Mr. McGregor contends that this letter was inaccurate insofar as it stated that Mr. McGregor and his wife cashed all of the substitute bonds. The first time Mr. McGregor asserted to defendant that this letter was inaccurate, however, was in response to the pending motion for summary judgment, on May 4, 2005. Discovery in this case closed on April 1, 2005.

[5] Ivory McGregor claims he had completed the form to the best of his knowledge.

6

Ivory McGregor filed this suit on May 11, 2004, in his capacity as Personal Representative of the Estate of Irma McGregor. Plaintiff's claim as stated in paragraphs 7 and 8 of the complaint is that federal regulations governing the manner for redeeming savings bonds create the terms of an implied contract, and the United States breached that contract on or about May 11, 1998 by redeeming the original bonds and substitute bonds to an unknown person who had forged Irma McGregor's endorsement. Plaintiff does not claim that the United States breached any contract with respect to the eleven unrelated savings bonds cashed that same day. Defendant states the claimed wrong is thus the bond redemption, which resulted in the alter IRS offset, not the offset itself. The claim is based on the Tucker Act, 28 U.S.C. § 1346(a)(2) which grants district courts jurisdiction over, and waives sovereign immunity for, breach of contract claims against the United States.

**II. Summary Judgment Standard.**[6]

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-590 (1986). The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Matsushita,

---

[6]Although defendant moved in the alternative for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedures, in this Order the Court does not reach the issue to which defendant requested judgment on the pleadings. Therefore, only the standard for summary judgment is recited in this Order.

7

475 U.S. at 586-90.

Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence, must set forth facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Lower Brule Sioux Tribe v. South Dakota, 104 F.3d 1017, 1021 (8th Cir. 1997). To determine whether the disputed facts are material, courts analyze the evidence in the context of the legal issues involved. Lower Brule, 104 F.3d at 1021. Thus, the mere existence of factual disputes between the parties is insufficient to avoid summary judgment. Id. Rather, "the disputes must be outcome determinative under prevailing law." Id. (citations omitted).

Furthermore, to establish that a factual dispute is genuine and sufficient to warrant trial, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the facts." Matsushita, 475 U.S. at 586. Demanding more than a metaphysical doubt respects the appropriate role of the summary judgment procedure: "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex, 477 U.S. at 327.

**III. Discussion.**

Defendants move for judgment on three grounds: (1) Plaintiff cannot sustain his burden of establishing that the bonds were redeemed by or for the benefit of anyone other than Irma McGregor; (2) Plaintiff cannot make a submissible case of the breach of contract alleged; and (3) Plaintiff did not exhaust administrative remedies. Grounds (1) and (2) will be examined below.

A.  Redemption of the Bonds by Someone other than Irma McGregor

Defendant argues that plaintiff cannot present a submissible case that the savings bonds at issue in this case were redeemed by someone other than Irma McGregor. As discussed above, plaintiff's claim is based on the Tucker Act, 28 U.S.C. § 1346(a)(2) which grants district courts jurisdiction over, and waives sovereign immunity for, breach of contract claims against the United States. See Zelman v. United States, 893 F. Supp. 78, 83 (D. Ma. 1995). An implied contract arises between the United States and its citizens when its citizens buy United States savings bonds. Bodek v. Department of the Treasury, 532 F.2d 277, 279 n. 7 (2nd Cir. 1976); Wolak v. United States, 366 F. Supp. 1106, 1110 (D. Conn. 1973). The terms of the implied contract are governed by federal law and are determined by the statutes, regulations and circulars under which the bonds are issued. Zelman v. United States, 893 F. Supp. at 83-84; Zelman v. Gregg, 16 F.3d 445, 446 (1st Cir. 1994); Wolak v. United States, 366 F. Supp. at 1110-1111. The party alleging a breach of contract bears the burden of proving the breach, Rowe v. United States, 4 Cl. Ct. 39, 45 (1983); Technical Assistance International v. United States, 150 F.3d 1369, 1373 (Fed. Cir. 1998), and also bears the burden of proving that it was damaged. Glendale Federal Bank v. United States, 378 F.3d 1308, 1311-12 (Fed. Cir. 2004).

The applicable U.S. Treasury Regulation, 31 C.F.R. § 321.7, provides now (and provided in 1997)[7] that either co-owner of a bond may redeem it. Therefore, if Irma McGregor redeemed or had benefit of the redemption of the bonds at issue in this case,

---

[7]The court in Zelman held that in determining the implied contract terms of a savings bond, the relevant statutory/regulatory provisions are those that were in effect at the time of the issuance of the bond. 893 F.Supp. at 84.

9

plaintiff cannot demonstrate a breach of contract.

Defendant originally argued that plaintiff cannot sustain his burden of establishing a submissible case that Irma McGregor did not have the benefit of redemption of the bonds, in that the evidence adduced in this case prior to the filing of the pending motion for summary judgment indicated that plaintiff admitted that Irma McGregor either knowingly or inadvertently redeemed both sets of savings bonds. Plaintiff's attorney, by letter dated May 10, 2000, stated: "[T]he original bonds were not cashed by Mr. or Mrs. McGregor. Mr. McGregor and his wife did however cash the bonds that were issued as substitutes for the original bonds that were not received by the McGregors." The contents of the letter were not challenged by plaintiff or his attorney until the filing of the response to the pending motion for summary judgment (nearly five years after Wonder's letter was written). Defendant noted that the original, substitute, and certain unrelated savings bonds were all redeemed at the same bank on the same date, and the number sequence stamped on the bonds indicates that the original, substitute, and unrelated bonds were inter-mixed. The evidence presented to the BPD and adduced at the time of the filing of defendant's pending motion showed that plaintiff's claim depended on what defendant called "the absurd hypothesis that the forger must have stood next to Irma McGregor at the cashier's window, slipped the original bonds into the numbering sequence as Irma McGregor was redeeming the replacement and other bonds, and was paid the proceeds." See Doc. No. 12, p. 10.

In response to the motion for summary judgment, plaintiff's attorney provided an affidavit "clarifying" the May 10, 2000 letter. This affidavit, signed on May 4, 2005, provides that the sentence quoted above from the May 10, 2000 letter should be changed to "Mr. McGregor and his wife redeemed a replacement bond on May 8, 1998 along with an

10

unrelated bond." See Doc. No. 17, p. 21. Plaintiff's attorney's affidavit also states that Mr. McGregor has repeatedly stated that he has no knowledge of the redemption of any other bonds on May 11, 1998.

Plaintiff maintains that he has sufficient evidence to demonstrate that an unknown person other than Irma or Ivory McGregor redeemed or had the benefit of the redemption of the original and replacement bonds. Plaintiff states that this evidence consists of (1) the handwritten letter from Ivory McGregor to the BPD, received on April 18, 2000, wherein he states he knew nothing about the savings bonds; (2) the Affidavit of Forgery signed by Ivory McGregor on February 19, 2004 stating that he did not sign or endorse those savings bonds or authorize anyone to receive any benefits or proceeds on his behalf; (3) handwriting samples of both Ivory and Irma McGregor that plaintiff's attorney asserts demonstrate neither party signed the bonds (See Doc. No. 12, Exhibit 11); (4) the "Claim for Lost, Stolen or Destroyed U.S. Savings Bonds" wherein Mr. McGregor certified that the bonds had been stolen (See Doc. No. 12, Exhibit 12); and (5) an affidavit signed by Mr. McGregor states that he did not redeem these bonds and his wife was ill for three years prior to her death, affecting her mobility and making it difficult for her to leave the residence without his assistance. Plaintiff also asserts that the McGregors ran a cleaning business out of their residence, which employed a variety of people with a frequent turnover. Plaintiff asserts that a number of people knew their address and knew that large sums of cash were kept in that house. Plaintiff asserts that this evidence establishes a submissible case of breach of contract sufficient to present to the "jury."[8]

---

[8]The Court notes that this is a bench-tried case, as plaintiff did not make a jury demand.

11

In reply, defendant notes that, even given plaintiff's retraction of the statement made by his attorney on May 10, 2000, circumstantial evidence remains that Irma McGregor redeemed all of the bonds, because (1) the eleven unrelated bonds (which plaintiff has never claimed were stolen/forged) were interspersed with the original and replacement bonds in the numbering sequence applied by Commerce Bank on May 11, 1998; (2) Ivory McGregor's Affidavit of Forgery (which provides that he did not sign the original bonds) is not relevant because either co-owner could have redeemed the bonds (see 31 C.F.R. § 321.7), and Irma McGregor could have redeemed the bonds without Mr. McGregor's authorization or knowledge; (3) the letter from plaintiff's attorney asserting that the handwriting samples demonstrate that forgery occurred is not competent evidence of forgery, and plaintiff has not identified any expert witness who will be able to testify in regards to the genuineness of the signatures[9]; and (4) although plaintiff argues that mobility problems would have made it difficult for Irma McGregor to leave her residence on May 11, 1998, plaintiff admits that Irma McGregor redeemed two bonds at Midland Bank on May 8, 1998, three days before the redemptions at issue. Defendant also notes that Ivory McGregor's implicit contention that he assisted in the May 8 redemption is at odds with his April 18, 2000 letter to BPD, in which he stated: "I don't know anything about the Savings Bonds in 1998. I did not know she had saving[s] bond[s]. We was not together in 1998 . . . ."

After considering the evidence presented by the parties, the Court finds that plaintiff

---

[9] Defendant also notes that Irma McGregor's signatures on the bonds redeemed on May 8, 1998 (which plaintiff admits are genuine), appear remarkably similar to the signatures on the original and replacement bonds redeemed on May 11, 1998.

12

has not presented a submissible case that the signatures on the savings bonds at issue were not those of Irma McGregor. Plaintiff's evidence, primarily, is that Ivory McGregor knew nothing about the savings bonds redeemed on May 11, 1998. This evidence does not give rise to an inference of forgery. When cashed, the savings bonds at issue in this case were interspersed with eleven other savings bonds which no one has ever claimed were forged. Furthermore, the plaintiff has provided no expert opinion with respect to the signatures on the bonds redeemed on May 11, 1998. Based on its comparison of the bonds redeemed on May 11, 1998, and the bonds redeemed on May 8, 1998 (which plaintiff admits were redeemed by Irma McGregor), the Court agrees with defendant that the signatures on the bonds redeemed on May 8, 1998, are remarkably similar the signatures on the bonds redeemed on May 11, 1998. Therefore, because plaintiff is unable to present a submissible case on the issue of forgery, defendant's motion for summary judgment (Doc. No. 12) is **GRANTED.**[10]

---

[10] Additionally, the BPD sent a letter to plaintiff dated July 27, 2000, wherein the BPD informed plaintiff that the replacement bonds and original bonds had been redeemed on the same date, and that the letter from plaintiff's attorney indicated that the substitute bonds had been cashed by Ivory McGregor. See Doc. No. 12, Ex. 15. Therefore, the BPD found no basis for reversing their prior conclusion that Irma McGregor had received the benefit of payment of both the original and substitute bonds. Plaintiff did not challenge the contents of his attorney's letter until the filing of the response to this motion for summary judgment, wherein his attorney provided an affidavit "clarifying" the contents of that letter. Even if this clarification would have been enough to satisfy plaintiff's burden of presenting a submissible case of forgery (which it is not), this clarification should have been submitted to the BPD long ago so they could have properly completed their review of this matter.

Therefore, it appears plaintiff failed to properly exhaust administrative remedies, as discussed in defendant's motion for summary judgment or in the alternative for judgment on the pleadings. However, after reviewing the case law cited in defendant's motion, the Court concludes notes that the jurisprudential exhaustion requirement discussed in defendant's motion does not constitute grounds for summary judgment or

13

B.  Breach of Contract

Defendant argues that, even if Irma McGregor did not receive the benefit of the original bonds, plaintiff cannot make a submissible case of the breach of contract claim alleged in the complaint. Defendant notes that plaintiff pled specifically that the breach of contract in this case was in the manner of redemption, and defendant states that plaintiff cannot meet his burden of establishing that a breach in the manner of redemption occurred.

The regulations governing Series EE bond redemption are set forth at 31 C.F.R. pt. 321 and the Appendix thereto. See 31 C.F.R. § 321.10(a). A paying agent, such as a bank, is liable to the United States for a loss resulting from an erroneous payment, unless the Secretary of the Treasury can make a determination that the loss resulted from no fault or negligence on the paying agent's part. 31 C.F.R. § 321.15; 31 C.F.R. § 321.18(b). These regulations suggest that there are situations where the United States may incur a loss (by providing relief to a forgery victim) even in situations where the redemption of the bond(s) was in conformity with the regulations. In other words, defendant argues that even if plaintiff could prove the endorsement on the bonds was forged, this alone would not establish that the agent did not comply with regulations in the redemption process.

Several regulations are applicable to the bonds at issue in this matter. 31 C.F.R. §

---

a dismissal with prejudice; instead, the proper course of action after a Court has determined a plaintiff has failed to exhaust administrative remedies pursuant to the jurisprudential exhaustion requirement is a dismissal <u>without prejudice</u> in order to allow plaintiff the ability to exhaust his administrative remedies. See Taylor v. United States Treasury Dept., 127 F.3d 470, 471, 478 (5th Cir. 1997). As dismissal without prejudice would be inconsistent with the other findings in this Order, the Court finds it unnecessary to enter judgment on this ground.

321.7 provides that the bond must be presented by a registered owner who is either (1) known to the paying agent or (2) who can establish his or her identity in accordance with Treasury guidelines. 31 C.F.R. § 321.9 provides that the bond must be endorsed in ink and that a home or business address must be shown to the agent. 31 C.F.R. § 321.11 provides that unless the presenter is a person well-known to the agent, the agent should note on the back of the bond, or in the agent's records, what was relied upon to establish identity. "The identification should be adequate to identify the payee under the circumstances of the transaction." Appendix, ¶ 11(b). Defendant states that exhibits A-1, A-3 and A-5 to Doc. No. 12 suggest that Commerce Bank complied with these directives, and that plaintiff cannot present a submissible case that Commerce Bank did not comply with these directives.

Plaintiff responds that paragraph 12(b) of the appendix to 31 C.F.R. pt. 321 requires an address, business or residential on the back of the bond, and none of the bonds redeemed on May 11, 1998 include an address for Irma or Ivory McGregor. However, defendant correctly notes that paragraph 12(b) of the appendix is applicable only to 31 C.F.R. § 321.11(d), which applies only to "payment to a legal representative of the last deceased registrant's estate." As the redemptions made on May 11, 1998, were not to a legal representative of a deceased registrant's estate, plaintiff's address was not necessary on the back of the redeemed bonds.

Plaintiff further responds that, under 31 C.F.R. 321 App. 11(b), the agent must make a notation on the bond explaining what was relied upon to establish the presenter's identify. Plaintiff states that "on the back of one of the redeemed bonds are some numbers that may be a social security number and birthdate. The source of the other numbers is

15

undetermined." Plaintiff seems to indicate that defendant has not proven what these numbers are, and that these number are not sufficient to permit a determination of the evidence of identity.

In reply, defendant states that it does not have corroborative evidence that the driver's license number or driver's license issuance date noted on the bond were correct; however, Irma McGregor's death certificate (Ex. 8 to Doc. No. 12) reveals that the social security number and birth date recorded were in fact hers. Additionally, the social security number recorded on the back of the bond redeemed on May 11, 1998, is the same as the social security number recorded on one of the two bonds that plaintiff admits Irma McGregor redeemed on May 8, 1998. (See Ex. 4 to Doc. No. 12). The Court agrees with defendant that this evidence is sufficient to permit identification of the payee under the circumstances of the transaction.

Furthermore, plaintiff argues that only one of the eighteen bonds redeemed on May 11, 1998 had any identifying numbers written on it; the remainder had only the purported signature of Irma McGregor. Plaintiff suggests that all of the bonds should have been inscribed with identifying notations. However, defendant notes that the absence of identifying notation on the bonds redeemed on May 11, 1998, does not show a violation of paragraph 11(b) of the Appendix. 31 C.F.R. § 321.11(b) makes clear that identification guidelines need not be followed if the presenter is "well-known to the agent or an established customer." Additionally, the guidelines and section 321.11(b) state that the identifying information may be recorded in the bank's records instead of on the back of the bond. Plaintiff has not provided any evidence showing that either of these factual situations did not occur; in fact, plaintiff has presented <u>absolutely no evidence</u> with respect to actions

16

taken by the paying agent. The Court finds that plaintiff has failed to provide evidence that a genuine issue of material fact exists as to whether the redemption procedures were proper. See Fed. R. Civ. P. 56(e); Lower Brule Sioux Tribe v. South Dakota, 104 F.3d 1017, 1021 (8th Cir. 1997) (setting forth plaintiff's burden on summary judgment).[11] Therefore, as plaintiff is unable to present a submissible case of a breach of contract with respect to redemption procedures, defendant's motion for summary judgment (Doc. No. 12) will be **GRANTED**.

## IV. Conclusion

Therefore, for the foregoing reasons,

(1)     Defendant's motion for summary judgment (Doc. No. 12) is **GRANTED**; and

---

[11]Plaintiff also suggests that defendant should be held strictly liable for any payments made to an imposter. The difficulty with plaintiff's argument is that the statutes and regulations, as currently written, appear to provide the Secretary of the Treasury with discretion as to whether to grant relief for stolen bonds. 31 U.S.C. § 3125(b) provides that the Secretary of the Treasury "may provide relief" for the loss or theft of a bond. Similarly, 31 C.F.R. § 353.25 provides that relief "is authorized" for loss or theft of Series EE bonds. Other courts have noted that regulatory language that provides that an action "is authorized" establishes official discretion for the agency not to take the action. See, e.g., Preserve Endangered Area of Cobb's History v. U.S. Army Corps of Engineers, 915 F.Supp. 378, 381 (N.D. Ga. 1995), aff'd, 87 F.3d 1242 (11th Cir. 1996). Furthermore, the dictum in Zelman v. United States suggests that this language leaves the Secretary discretion as to whether to grant relief for stolen bonds. 893 F.Supp. at 84. Especially in a situation such as this, where plaintiff presented insufficient evidence to the BPD that the subject bonds were stolen, the Court is not inclined to look beyond the plain language of the relevant statutes and regulations in order to find defendant strictly liable.

17

(2) All remaining pending motions are **DENIED AS MOOT.**

**IT IS SO ORDERED.**

Date: October 18, 2005                  S/ FERNANDO J. GAITAN, JR.
Kansas City, Missouri                 Fernando J. Gaitan, Jr.
                                                 United States District Judge